UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHERRY HUGGINS, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CURALEAF HOLDINGS, INC., JOSEPH LUSARDI, NEIL DAVIDSON, and JONATHAN FAUCHER,<br><br>Defendants. | Case No:<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff Sherry Huggins ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, public filings, wire and press releases published by and regarding Curaleaf Holdings, Inc. ("Curaleaf" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.  This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Curaleaf securities between November 21, 2018 and July 22, 2019, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.  The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as Defendants conduct business within, the alleged misstatements entered, and the subsequent damages took place in this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Curaleaf securities during the Class Period and was economically damaged thereby.

7.      Defendant Curaleaf purports to operate as an integrated medical and wellness cannabis operator in the United States.  Curaleaf is incorporated in Canada and has headquarters in Massachusetts.  Curaleaf operates within this judicial district.  Curaleaf's common stock trades on the OTCMKT under the ticker symbol "CURLF."

8.      Defendant Joseph Lusardi ("Lusardi") has served as the Company's Chief Executive Officer ("CEO") during the Class Period.

9.      Defendant Neil Davidson ("Davidson") has served as the Company's Chief Financial Officer ("CFO") since January 2019.

10.     Defendant Jonathan Faucher ("Faucher") served as the Company's CFO from January 2017 until February 2019.  He currently serves as the Chief Operating Officer of Curaleaf's Florida division.

11.     Defendants Lusardi, Davidson, and Faucher are collectively referred to herein as the "Individual Defendants."

12. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

13. Curaleaf is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

14. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Curaleaf under *respondeat superior* and agency principles.

15. Defendants Curaleaf and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### MATERIALLY FALSE AND MISLEADING
### STATEMENTS ISSUED DURING THE CLASS PERIOD

16. On November 21, 2018, Curaleaf issued a press release entitled, "Curaleaf Launches CBD Consumer Product Line," announcing that it had launched Curaleaf Hemp, a line of hemp-based CBD products for sale on a new website, http://www.curaleafhemp.com/. The press release stated, in relevant part:

> **Curaleaf Hemp offers range of premium, natural hemp-based products designed to enhance personal health and wellness**
>
> WAKEFIELD, Mass., Nov. 21, 2018 /PRNewswire/ -- Curaleaf, Inc. ("Curaleaf")(CSE: CURA) – one of the largest and fastest growing vertically integrated cannabis operators in the United States – today announced the launch of Curaleaf Hemp, a line of premium hemp-based CBD products.
>
> Curaleaf Hemp was developed by an experienced team of scientists and product experts. The natural, non-intoxicating products meet the strictest quality standards and are derived from hemp farmed in the United States. Curaleaf Hemp's products are made with simple, natural ingredients and are infused with essential oils such as lavender, lemon, jasmine, ginger and vanilla to add an additional layer of benefits for overall wellness.
>
> *The range of products are available for purchase online at www.curaleafhemp.com and at select retailers nationwide.* Visit the website and enter the code CURA25 for 25% off for Black Friday weekend from November 23-November 25.
>
> Curaleaf Hemp products include:
>
> - Drops: CBD oil in droplet forms mixed with natural essential oils; available in Lemon Bergamot, Lavender Sweet Orange, Ginger Clove Cinnamon, Vanilla Ylang Ylang and Jasmine Wintergreen
>
> - Lotions: Topical cream for everyday pain relief; available in Lemongrass and Menthol
>
> - Soft-Gel Capsules: Convenient capsules perfect for daily use

4

- Disposable Vape Pens: On-the-go vape pens; available in Lemon Bergamot, Lavender Sweet Orange, Ginger Clove Cinnamon, Vanilla Ylang Ylang and Jasmine Wintergreen

Product photos and answers to frequently asked questions are available for download here.

*"Expanding our presence within the industry and entering the consumer goods marketplace with Curaleaf Hemp is an exciting step for the company," said Joe Lusardi, President and Chief Executive Officer of Curaleaf. "Patients already trust and rely on Curaleaf for the highest-quality medical cannabis products and we have taken that same care with the development of Curaleaf Hemp. Supporting overall wellness, Curaleaf Hemp is a consistent and reliable line of hemp-based CBD products that consumers can trust. We expect this to become a significant economic contributor to our business in the years to come."*

All Curaleaf Hemp products undergo strict laboratory testing before formulation as well as batch testing on the final products before distribution. Lab results are available upon request.

(Emphasis added.)

17. On April 23, 2019, Curaleaf filed with the Canadian Securities Exchange Audited Financial Statements for the period ended December 31, 2018 (the "2018 Financials"). The 2018 Financials were signed by Defendants Lusardi and Davidson. The 2018 Financials contained signed certifications by Defendants Lusardi and Davidson attesting to the accuracy of the financial statements and the disclosure of all fraud.

18. The 2018 Financials included a management discussion and analysis, which provided, in pertinent part, the following regarding marketing of CBD products:

The Company's cannabis-based products are supplied to patients diagnosed with certain medical conditions. However, the Company's cannabis-based products are not approved by the FDA as "drugs" or for the diagnosis, cure, mitigation, treatment, or prevention of any disease. Accordingly, the FDA may regard any promotion of the cannabis-based products as the promotion of an unapproved drug in violation of the Food, Drug and Cosmetic Act ("FDCA").

Cannabidiol, a compound referred to as CBD is one of the non-psychotropic cannabinoids in industrial hemp from the plant species Cannabis sativa L. There has been growing interest in CBD in recent years. CBD is increasingly used as an ingredient in food and beverages, as an ingredient in dietary supplements and as

5

an ingredient in cosmetics, thereby generating new investments and creating employment in the cultivation and processing of hemp and hemp-derived products. Pharmaceutical products with CBD as an active ingredient have also been developed, including one product approved by the FDA (Epidiolex®). Foods and beverages, dietary supplements, pharmaceuticals, and cosmetics containing CBD are all subject to regulation under the FDCA. The FDA has asserted that CBD is not a lawful ingredient in foods and beverages, supplements and pharmaceuticals (unless FDA-approved), although FDA has generally refrained from taking enforcement action against those products. CBD-containing products may also be subject to the jurisdiction of state and local health authorities.

In recent years, the FDA has issued letters to a number of companies selling products that contain CBD oil derived from hemp warning them that the marketing of their products violates the FDCA. FDA enforcement action against the Company could result in a number of negative consequences, including fines, disgorgement of profits, recalls or seizures of products, or a partial or total suspension of the Company's production or distribution of its products. Any such event could have a material adverse effect on the Company's business, prospects, financial condition, and operating results.

On December 20, 2018, the Agricultural Improvement Act, H.R. 25 (the "Farm Bill"), which included the language of the Hemp Farming Act of 2018, removed industrial hemp and hemp-derived products with a tetrahydrocannabinol ("THC") concentration of not more than 0.3 percent (dry weight basis) from Schedule I of the Controlled Substances Act. This has the effect of legalizing the cultivation of industrial hemp for commercial purposes, including the production of CBD and other cannabinoids, except for THC, subject to regulations to be developed by the U.S. Department of Agriculture.

The Company sells and distributes certain products containing CBD. There is a risk that the FDA or state or local Departments of Health will seek to stop the Company from selling its CBD products or seek to have the claims made for those products revised.

19. On May 10, 2019, Curaleaf issued a press release entitled "Leading Cannabis Company Curaleaf Enters CBD Pet Market With New Bido Brand." The Press Release, which included a statement from Defendant Lusardi, provided in relevant part:

> *High-quality CBD pet drops and soft-baked bites support a pet's overall health*
>
> WAKEFIELD, Mass., May 10, 2019 /PRNewswire/ -- Curaleaf Holdings, Inc. (CSE: CURA) (OTCQX: CURLF) ("Curaleaf"), a leading vertically integrated cannabis operator in the United States, today announced the launch of Bido, hemp-based CBD products for pets. CBD is a non-intoxicating, non-

6

psychoactive compound from the cannabis sativa plant. *CBD has been shown in initial third-party studies to support a pet's overall wellness including the potential to help manage pain and anxiety*. Bido pet drops come in three varieties, bacon, salmon and unflavored "pure," and Bido soft-baked bites are available in apple chicken, peanut butter bacon, and honey sweet potato. All Bido products can be purchased online at www.curaleafhemp.com.

Bido's tasty products were developed using 100 percent natural and U.S. grown hemp that was tested and extracted to the highest industry standards. Curaleaf's team of scientists transformed the hemp-based CBD oil into a product with a precise dosage and flavor for pets. Product photos are available for download here.

All Bido products undergo strict laboratory testing before formulation as well as batch testing on the final products before distribution. Lab results are available upon request.

For more information and promotional deals, follow Bido on social at:

- Facebook: BidoPet
- Twitter: @BidoPet
- Instagram: @bidopet

*"Our human customers are already reaping the benefits of CBD with Curaleaf Hemp. The same care and research went into the development of Bido. We are excited to be extending our high quality, trusted products to pet owners," said Joe Lusardi, President and Chief Executive Officer of Curaleaf. "The launch of Bido is just one more way we are the most accessible cannabis company in the U.S."*

Bido joins Curaleaf's growing line of hemp-based CBD products. Curaleaf Hemp was launched last fall and currently includes lotions, patches, oils and disposable vape pens, all infused with essential oils such as lavender, lemon, jasmine, ginger and vanilla to add an additional layer of benefits for overall wellness. Curaleaf Hemp products are available online and at select retailers.

(Emphasis added.)

20. The statements contained in ¶¶16-19 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Curaleaf, on its website and social media pages, marketed its CBD

7

products to be used as drugs and dietary supplements, contrary to law; (ii) Curaleaf also sold unapproved animal drugs on its website; (iii) such conduct would result in a warning letter from the U.S. Food and Drug Administration ("FDA"); and (iv) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH EMERGES

21. On July 22, 2019, the FDA sent a warning letter to Curaleaf regarding several CBD products sold at http://curaleafhemp.com (the "Warning Letter"). The Warning Letter noted that Curaleaf was selling unapproved new and misbranded drugs, improperly marketing its CBD products as dietary supplements, and selling unapproved new animal drugs in violation of the Federal Food, Drug, and Cosmetic Act. The letter stated, in pertinent part:

> Based on our review of your website, your "CBD Lotion," "CBD Pain-Relief Patch," "CBD Tincture," and "CBD Disposable Vape Pen" products are drugs under section 201(g)(1) of the FD&C Act, 21 U.S.C. 321(g)(1), because they are intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease and/or intended to affect the structure or any function of the body.
>
> * * *
>
> Information on your website and social media accounts suggests that you may intend to market your CBD products as dietary supplements. For example, a disclaimer on your website includes the statement "Cannabidiol (CBD) is a natural constituent of industrial hemp and is a dietary supplement." You also display a photo of a CBD product with a supplement facts panel that appears to be your "CBD Tincture" (Relax version) on your social media accounts. Furthermore, you state under the disclaimer section on your "CBD Lotion," "CBD Pain-Relief Patch," "CBD Tincture," and "CBD Disposable Vape Pen" products' webpages that "Cannabidiol (CBD) . . . is a dietary supplement." Based on these observations, it appears you intend to market your CBD products as dietary supplements. However, they cannot be dietary supplements because they do not meet the definition of a dietary supplement under sections 201(ff)(3)(B) and 201(ff)(2)(A)(i) of the FD&C Act, 21 U.S.C. 321(ff)(3)(B) and 321(ff)(2)(A)(i).
>
> * * *

8

> During a recent review of your firm's website (https://curaleafhemp.com/collections/pet-dropsExternal Link Disclaimer), FDA determined that your firm is marketing "Bido CBD for Pets" (Pure, Bacon and Salmon Flavor), which are unapproved new animal drugs. Based on our review of the information provided, we determined that these products are intended for use in the mitigation, treatment, or prevention of diseases in animals, which makes them drugs under section 201(g)(1)(B) of the Federal Food, Drug and Cosmetic Act (the FD&C Act), 21 U.S.C. 321(g)(1)(B). Further, as discussed below, these products are unapproved new animal drugs and marketing them violates the FD&C Act.

22. On this news, shares of Curaleaf fell $0.58 per share, or 7.27%, to close at $7.40 per share on July 23, 2019, damaging investors.

23. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

24. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than Defendants who acquired publicly traded Curaleaf securities during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Curaleaf, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

25. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Curaleaf securities were actively traded on OTCQX. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

9

26. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

27. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

28. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business of Curaleaf;
- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;
- whether the Defendants caused Curaleaf to issue false and misleading filings during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false filings;
- whether the prices of Curaleaf securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

29. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

30. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Curaleaf shares met the requirements for listing, and were listed and actively traded on the OTCQX, an efficient market;
- as a public issuer, Curaleaf filed periodic public reports;
- Curaleaf regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;
- Curaleaf's securities were liquid and traded with moderate to heavy volume during the Class Period; and
- Curaleaf was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

31. Based on the foregoing, the market for Curaleaf securities promptly digested current information regarding Curaleaf from all publicly available sources and reflected such

11

information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

32. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I

### For Violations of Section 10(b) and Rule 10b-5 Promulgated Thereunder
### Against All Defendants

33. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

34. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

35. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

36. Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Curaleaf securities during the Class Period.

37. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Curaleaf were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Curaleaf, their control over, and/or receipt and/or modification of Curaleaf's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Curaleaf, participated in the fraudulent scheme alleged herein.

38. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Curaleaf personnel to members of the investing public, including Plaintiff and the Class.

39. As a result of the foregoing, the market price of Curaleaf securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff

and the other members of the Class relied on the statements described above and/or the integrity of the market price of Curaleaf securities during the Class Period in purchasing Curaleaf securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

40. Had Plaintiff and the other members of the Class been aware that the market price of Curaleaf securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Curaleaf securities at the artificially inflated prices that they did, or at all.

41. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

42. By reason of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages that they suffered in connection with their purchase of Curaleaf securities during the Class Period.

## COUNT II

### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

43. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

44. During the Class Period, the Individual Defendants participated in the operation and management of Curaleaf, and conducted and participated, directly and indirectly, in the conduct of Curaleaf's business affairs. Because of their senior positions, they knew the adverse

non-public information about Curaleaf's misstatement of revenue and profit and false financial statements.

45. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Curaleaf's financial condition and results of operations, and to correct promptly any public statements issued by Curaleaf that had become materially false or misleading.

46. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Curaleaf disseminated in the marketplace during the Class Period concerning Curaleaf's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Curaleaf to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Curaleaf within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Curaleaf securities.

47. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Curaleaf.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of Plaintiff and the Class, prays for judgment and relief as follows:

a) declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiff's counsel as Lead Counsel;

      b)      awarding damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

      c)      awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

      d)      awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: August 12, 2019

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

*Attorneys for Plaintiff*

**Submission Date**

2019-08-05 16:24:08

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.   I make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Curaleaf Holdings, Inc. ("Curaleaf" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire Curaleaf securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Curaleaf securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.   To the best of my current knowledge, the attached sheet lists all of my transactions in Curaleaf securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

**Name**

**Print Name**

Sherry Huggins

**Signature**



**Full Name**

**Curaleaf Holdings, Inc. (CURLF)**  **Huggins, Sherry**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| 3/25/2019 | Purchase | 500 | $9.6400 |